STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. AP-05-014

                                                  REC-CUM-1/12/06

BARRY T. MAZZAGLIA, Trustee
Of the Mazzaglia Family Trust

            Petitioner
_____

            v.                                    ORDER ON
                                                  PETITIONER'S
                                                  80C APPEAL

STATE OF MAINE DEPARTMENT OF
ENVIRONMENTAL PROTECTION

            Respondent


Before the court is Petitioner Barry T. Mazzaglia's ("Petitioner") appeal,

pursuant to M.R.Civ.P. 80C, of the State of Maine Department of Environmental

Protection's ("DEP") refusal to process his application for a modification of the

250-foot wide shorefront buffer on his property.

## BACKGROUND AND RECORD ON APPEAL

Petitioner is trustee of the Mazzaglia Family Trust, which owns Lot 71 in

the Lake Sebago Estates subdivision in Naples. Lots 1 through 70 in the

subdivision range in size from 1.2 acres to 4.3 acres, and are restricted to single-

family residential use. Lot 71 is approximately 34 acres[1] and is not subject to the

single-family residential use restriction.[2] Accordingly, the October 5, 1987 DEP

order approving and regulating the subdivision placed buffer restrictions on Lot

---

[1] The 1987 DEP order cites Lot 71 as "a 30-acre area"; a plat at Tab 30 of the Record on Appeal shows the area of Lot 71 to be "44.8 acres +/- " and may qualify this number as "38.5 acres at high water," however, the print on the plat is small and difficult to read; a December 11, 1997 DEP order approving further subdivision of Lot 71 cites the acreage as 4.3 acres for Lot 71-1, 3.0 acres for Lot 71-2 and 27 acres for Lot 71 (34.3 acres combined); the October 16, 2003 Warranty Deed from Barry T. Mazzaglia to the Mazzaglia Family Trust cites the total acreage of Lot 71 as "44.8 +/- acres."

[2] Patten Corporation, the original owner and subdivider, contemplated that the purchaser of Lot 71 would construct multi-family housing on it.

1

71 separate and apart from the buffer restrictions placed on Lots 1 through 70. Paragraph 4 of the conditions states, "Lots 1-70 inclusive shall be conveyed subject to a deed restriction which requires the [designated] buffer areas... to be maintained in accordance with the recorded Buffer Zone Management Plan." Lot 71, however, is governed separately by Paragraph 11 of the conditions:

> Lot 71 shall be conveyed subject to the maintenance of the following undisturbed, natural buffers:
> (a)  a 250-foot wide undisturbed, natural buffer along the shorefront wetland
> (b)  a 150-foot wide undisturbed, natural buffer along the easterly boundary of the lot; and
> (c)  a 100-foot wide undisturbed buffer along the westerly boundary of the lot.

However, Paragraph 12 of the conditions states, "Prior to the sale of any of the proposed lots, Patten shall revise the 'Declaration of Restrictive Covenants, Common Easements, Exceptions and Restrictions in Lake Sebago Estates, Naples, Maine' to include the restrictions required by Conditions 4, 9, 10, *and 11* [concerning Lot 71] of this order." (emphasis added.) Accordingly, the buffer restrictions on Lot 71 were contemplated by the Order to be part of the Declaration of Restrictive Covenants for Sebago Lake Estates. The Declaration included in the record, however, describes only "seventy (70) lots" as subject to its covenants. R. at 37.

The deed to Lot 71, however, states that it is "subject to the provisions of [the Declaration], with the exception of Paragraph 15[3] of said Declaration, which shall not apply to the above described premises." Paragraph 4 of the Declaration, to which Lot 71 *is* subject according to the terms of the deed (though not according to the terms of the Declaration itself), states that "each lot conveyed in

---

[3] Paragraph 15 of the Declaration establishes the Lake Sebago Estates Homeowner's Association, the main purpose of which is to maintain roads and common areas within the subdivision.

2

this subdivision must... maintain certain natural buffer areas in accordance with the standards and restrictions set forth in the Buffer Zone Management Plan." To make matters yet more complicated, however, the Buffer Zone Management Plan apparently addresses only lots 1 through 70. *See* R. at 26 (¶ 4 of the 1987 DEP Order Conditions.)

Petitioner purchased Lot 71 and conveyed it to the Mazzaglia Family Trust on October 13, 2003. At some point in 2003 or 2004, Petitioner commenced construction on the lot, placing a foundation within 205 feet of the wetland edge, and thus intruding forty-five feet into the 250-foot shorefront wetland buffer zone. Petitioner was cited for this infraction and subsequently, on August 13, 2004, he applied to the DEP for a modification of the shorefront wetland buffer zone, to reduce the zone from 250 feet to 100 feet.[4] Several lot owners from lots 1 through 70 submitted objections to the proposed modification.

DEP denied consideration of Petitioner's application, finding that Petitioner had failed to demonstrate adequate title, right or interest to make the requested modification under the DEP Rules Concerning the Processing of Applications.[5]

## DISCUSSION

---

[4] This modification would be in conformity with the Town's Shoreland Zoning Ordinance, which requires a 100-foot shoreline setback.

[5] 96-096 CMR 2.11(D) states in part:

**Title, right or interest.** Prior to acceptance of an application for processing, an applicant shall demonstrate to the Department's satisfaction sufficient title, right or interest in all of the property that is proposed for development or use. An applicant must maintain sufficient title, right or interest throughout the entire application processing period. Methods of proving title, right or interest include, but are not limited to, the following:

    (1) When the applicant owns the property, a copy of the deed(s) to the property must be supplied;

The Department may return an application, after it has already been accepted as complete for processing, if the Department determines that the applicant did not have, or no longer has, sufficient title, right or interest. No fees will be refunded if an application is returned for lack of continued title, right or interest.

3

Last year, this court reviewed an 80C appeal from the owner of Lot 35 of the Lake Sebago Estates. *Collins v. State of Maine, Department of Environmental Protection*, 2004 Me. Super. LEXIS 251. As in this case, the DEP had denied review of that owner's application for modification of the lot's building restrictions, stating that he had not shown adequate title, right or interest to apply for the permit on the project site. *Id.* at pp. 2-3. This court upheld the DEP's denial, stating that the petitioner's ownership interest was limited by explicit, unambiguous land-use restrictions. *Id.* at p. 9. This court explained that, even if the DEP were to review the application and approve the petitioner's proposed use of the land, the restrictive covenants on the property would still preclude him from utilizing the permit and making use of the land in the manner proposed. *Id.*

Petitioner submits that even if lot owners 1 through 70, such as Collins, do *not* have standing to request modification of the restrictions on their lots, according to the Declaration, the restrictions imposed on Lot 71 never became part of the restrictive covenants that are mutually enforceable among the owners of lots 1 though 70. Petitioner asserts that, therefore, Collins's difficulty is not present in this case.

The DEP's position is that the buffer restrictions on Lot 71 are unmodifiable, and that therefore Petitioner's application, like Collins's above, was rightly denied review due to the DEP's inability to effect a change. The DEP maintained at oral argument, however, that in refusing Petitioner's application, it was not relying on the existence of the other lot owners' right to enforce Lot 71's buffer restrictions. Indeed, as recounted above, the existence of third-party rights is at this stage undetermined, due to the conflicting language in the Order,

4

the Declaration, and the deed to Lot 71. This lack of explicit, unambiguous third-party rights to enforce Lot 71's land use restrictions distinguishes this case from *Collins*.

The DEP's insistence that it nevertheless cannot review the buffer restrictions that it had imposed on Lot 71 does not have a basis in the law. The DEP is unable to point to any record evidence that it intended the restrictions it imposed on Lot 71 to be absolutely unmodifiable once imposed. Logic compels the conclusion that restrictions imposed by the DEP can be modified by the DEP. If the ability of the other lot owners to enforce the buffer restrictions on Lot 71 is unclear, then it is possible that, upon a favorable review by the DEP modifying those restrictions, Petitioner would be able to proceed to take advantage of this modification. Accordingly, Petitioner has shown that he has standing to bring an application before the DEP for modification of the buffer restrictions on his property.

The entry is:

> Petitioner's 80C appeal is GRANTED. Petitioner has shown sufficient right, title, or interest to apply for the permit requested. The case is remanded to the Department of Environmental Protection for consideration of Petitioner's original Application for Project Modification.

Dated at Portland, Maine this __18th__ day of __January__ 2006.

Robert E. Crowley
Justice, Superior Court

5

Date Filed __03/11/05__   __CUMBERLAND__   Docket No. __AP-05-14__

County

Action __80C APPEAL__

BARRY T. MAZZAGLIA

STATE OF MAINE, DEPARTMENT OF
ENVIRONMENTAL PROTECTION

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| GREGORY M. CUNNINGHAM, ESQ.<br>ARNOLD C. MACDONALD, ESQ.<br>100 MIDDLE STREET<br>PO BOX 9729<br>PORTLAND, ME 04104-5029<br>774-1200 | MARGARET BENSINGER AAG<br>6 STATE HOUSE STATION<br>AUGUSTA ME 04333 |

Date of
Entry

STATE OF MAINE                                                    SUPERIOR COURT
CUMBERLAND, ss.                                                   CIVIL ACTION
                                                                 DOCKET NO. AP-05-014

BARRY T. MAZZAGLIA, Trustee
Of the Mazzaglia Family Trust

            Petitioner

      v.                                         AMENDED ORDER ON
                                                 PETITIONER'S 80C
                                                 APPEAL

STATE OF MAINE DEPARTMENT OF
ENVIRONMENTAL PROTECTION

            Respondent

Before the court is Petitioner Barry T. Mazzaglia's ("Petitioner") appeal,

pursuant to M.R.Civ.P. 80C, of the State of Maine Department of Environmental

Protection's ("DEP") refusal to process his application for a modification of the

250-foot wide shorefront buffer on his property.

## BACKGROUND AND RECORD ON APPEAL

Petitioner is trustee of the Mazzaglia Family Trust, which owns Lot 71 in

the Lake Sebago Estates subdivision in Naples. Lots 1 through 70 in the

subdivision range in size from 1.2 acres to 4.3 acres, and are restricted to single-

family residential use. Lot 71 is approximately 34 acres[1] and is not subject to the

single-family residential use restriction.[2] Accordingly, the October 5, 1987 DEP

order approving and regulating the subdivision placed buffer restrictions on Lot

---

[1] The 1987 DEP order cites Lot 71 as "a 30-acre area"; a plat at Tab 30 of the Record on Appeal shows the area of Lot 71 to be "44.8 acres +/- " and may qualify this number as "38.5 acres at high water," however, the print on the plat is small and difficult to read; a December 11, 1997 DEP order approving further subdivision of Lot 71 cites the acreage as 4.3 acres for Lot 71-1, 3.0 acres for Lot 71-2 and 27 acres for Lot 71 (34.3 acres combined); the October 16, 2003 Warranty Deed from Barry T. Mazzaglia to the Mazzaglia Family Trust cites the total acreage of Lot 71 as "44.8 +/- acres."

[2] Patten Corporation, the original owner and subdivider, contemplated that the purchaser of Lot 71 would construct multi-family housing on it.

1

71 separate and apart from the buffer restrictions placed on Lots 1 through 70. Paragraph 4 of the conditions states, "Lots 1-70 inclusive shall be conveyed subject to a deed restriction which requires the [designated] buffer areas... to be maintained in accordance with the recorded Buffer Zone Management Plan." Lot 71, however, is governed separately by Paragraph 11 of the conditions:

> Lot 71 shall be conveyed subject to the maintenance of the following undisturbed, natural buffers:
> (a)   a 250-foot wide undisturbed, natural buffer along the shorefront wetland
> (b)   a 150-foot wide undisturbed, natural buffer along the easterly boundary of the lot; and
> (c)   a 100-foot wide undisturbed buffer along the westerly boundary of the lot.

However, Paragraph 12 of the conditions states, "Prior to the sale of any of the proposed lots, Patten shall revise the 'Declaration of Restrictive Covenants, Common Easements, Exceptions and Restrictions in Lake Sebago Estates, Naples, Maine' to include the restrictions required by Conditions 4, 9, 10, *and 11* [concerning Lot 71] of this order." (emphasis added.) Accordingly, the buffer restrictions on Lot 71 were contemplated by the Order to be part of the Declaration of Restrictive Covenants for Sebago Lake Estates. The Declaration included in the record, however, describes only "seventy (70) lots" as subject to its covenants. R. at 37.

The deed to Lot 71, however, states that it is "subject to the provisions of [the Declaration], with the exception of Paragraph 15[3] of said Declaration, which shall not apply to the above described premises." Paragraph 4 of the Declaration, to which Lot 71 *is* subject according to the terms of the deed (though not according to the terms of the Declaration itself), states that "each lot conveyed in

---

[3] Paragraph 15 of the Declaration establishes the Lake Sebago Estates Homeowner's Association, the main purpose of which is to maintain roads and common areas within the subdivision.

2

this subdivision must... maintain certain natural buffer areas in accordance with the standards and restrictions set forth in the Buffer Zone Management Plan." To make matters yet more complicated, however, the Buffer Zone Management Plan apparently addresses only lots 1 through 70. *See* R. at 26 (¶ 4 of the 1987 DEP Order Conditions.)

Petitioner purchased Lot 71 and conveyed it to the Mazzaglia Family Trust on October 13, 2003. At some point in 2003 or 2004, Petitioner commenced construction on the lot, allegedly placing a foundation within the 250-foot shorefront wetland buffer zone. Petitioner was cited for this infraction and subsequently, on August 13, 2004, he applied to the DEP for a modification of the shorefront wetland buffer zone, to reduce the zone from 250 feet to 100 feet.[4] Several lot owners from lots 1 through 70 submitted objections to the proposed modification.

DEP denied consideration of Petitioner's application, finding that Petitioner had failed to demonstrate adequate title, right or interest to make the requested modification under the DEP Rules Concerning the Processing of Applications.[5]

## DISCUSSION

---

[4] This modification would be in conformity with the Town's Shoreland Zoning Ordinance, which requires a 100-foot shoreline setback.

[5] 96-096 CMR 2.11(D) states in part:

**Title, right or interest.** Prior to acceptance of an application for processing, an applicant shall demonstrate to the Department's satisfaction sufficient title, right or interest in all of the property that is proposed for development or use. An applicant must maintain sufficient title, right or interest throughout the entire application processing period. Methods of proving title, right or interest include, but are not limited to, the following:

(1) When the applicant owns the property, a copy of the deed(s) to the property must be supplied;

The Department may return an application, after it has already been accepted as complete for processing, if the Department determines that the applicant did not have, or no longer has, sufficient title, right or interest. No fees will be refunded if an application is returned for lack of continued title, right or interest.

Last year, this court reviewed an 80C appeal from the owner of Lot 35 of the Lake Sebago Estates. *Collins v. State of Maine, Department of Environmental Protection*, 2004 Me. Super. LEXIS 251. As in this case, the DEP had denied review of that owner's application for modification of the lot's building restrictions, stating that he had not shown adequate title, right or interest to apply for the permit on the project site. *Id.* at pp. 2-3. This court upheld the DEP's denial, stating that the petitioner's ownership interest was limited by explicit, unambiguous land-use restrictions. *Id.* at p. 9. This court explained that, even if the DEP were to review the application and approve the petitioner's proposed use of the land, the restrictive covenants on the property would still preclude him from utilizing the permit and making use of the land in the manner proposed. *Id.*

Petitioner submits that even if lot owners 1 through 70, such as Collins, do *not* have standing to request modification of the restrictions on their lots, according to the Declaration, the restrictions imposed on Lot 71 never became part of the restrictive covenants that are mutually enforceable among the owners of lots 1 though 70. Petitioner asserts that, therefore, Collins's difficulty is not present in this case.

The DEP's position is that the buffer restrictions on Lot 71 are unmodifiable, and that therefore Petitioner's application, like Collins's above, was rightly denied review due to the DEP's inability to effect a change. The DEP maintained at oral argument, however, that in refusing Petitioner's application, it was not relying on the existence of the other lot owners' right to enforce Lot 71's buffer restrictions. Indeed, as recounted above, the existence of third-party rights is at this stage undetermined, due to the conflicting language in the Order,

4

the Declaration, and the deed to Lot 71. This lack of explicit, unambiguous third-party rights to enforce Lot 71's land use restrictions distinguishes this case from *Collins*.

The DEP's insistence that it nevertheless cannot review the buffer restrictions that it had imposed on Lot 71 does not have a basis in the law. The DEP is unable to point to any record evidence that it intended the restrictions it imposed on Lot 71 to be absolutely unmodifiable once imposed. Logic compels the conclusion that restrictions imposed by the DEP can be modified by the DEP. If the ability of the other lot owners to enforce the buffer restrictions on Lot 71 is unclear, then it is possible that, upon a favorable review by the DEP modifying those restrictions, Petitioner would be able to proceed to take advantage of this modification. Accordingly, Petitioner has shown that he has standing to bring an application before the DEP for modification of the buffer restrictions on his property.

The entry is:

> Petitioner's 80C appeal is GRANTED. Petitioner has shown sufficient right, title, or interest to apply for the permit requested. The case is remanded to the Department of Environmental Protection for consideration of Petitioner's original Application for Project Modification.

Dated at Portland, Maine this 3RD day of February, 2006.

Robert E. Crowley
Justice, Superior Court

5

*QH!*

GREGORY CUNNINGHAM ESQ
ARNOLD MACDONALD ESQ
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME 04104-5029

*Def*

MARGARET BENSINGER AAG
DEPARTMENT OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006